IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WALTER I. DROMGOOLE                                                    PLAINTIFF

V.                                    NO. 10-3001

MICHAEL J. ASTRUE,
Commissioner of Social Security                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Walter I. Dromgoole, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on March 8, 2005, alleging an inability to work since October 22, 2001, due to a learning disorder, hernia, "sad feet," allergies, headaches, and the fact that he can not read or write anything except a few three letter words. (Tr. 49-51, 74, 254-257). For DIB purposes, Plaintiff maintained insured status through December 31, 2009. (Tr. 12). An administrative hearing was held on June 28, 2007, at which Plaintiff appeared with counsel, and he and his wife testified. (Tr. 265-323). It is important to note at this time that Plaintiff previously filed DIB and SSI applications, which were denied

-1-

initially and on reconsideration, and after the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review, Plaintiff filed a complaint in the United States District Court for the Western District of Arkansas in <u>Dromgoole v. Barnhart</u>, Civil No. 04-3081.  On February 1, 2006, Magistrate Judge Bobby E. Shepherd entered a Memorandum Opinion and Judgment in that case, wherein he concluded that Plaintiff was disabled due to his mental impairments, but that alcoholism was a contributing factor material to his disability, and that Plaintiff's intellectual limitations were not so severe as to render him totally disabled.  He found that Plaintiff could return to his past relevant work as a food preparer, sandblaster, and laborer.  <u>Id.</u> at pgs. 12-15.

In the present case, by written decision dated October 2, 2007, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - mild mental retardation and organic brain dysfunction. (Tr.14 ).  However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 17).  The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: moderate limitation in his ability to understand, remember and carry out complex instructions, make judgments on complex work related decisions, interact appropriately with coworkers, supervisors and the public and respond appropriately to usual work situations and routine work changes.

(Tr. 18-19).  With the help of a vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs that Plaintiff could perform, such as production worker, maid and house cleaner, and sewing machine operator. (Tr.

23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 25, 2009. (Tr. -2-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed briefs and this case is now ready for decision. (Docs. 10, 11).

**II.     Evidence Presented:**

Plaintiff was born in 1964 and, although he completed twelve years of school, he is unable to read English and write more than his name in English. (Tr. 71, 74). According to Plaintiff, he received a diploma, but not for regular schooling. He was in a vocational program, where he worked and the employers rated his job performance. He went to classes maybe only one day a week or just one hour, and worked the rest of the time. (Tr. 79).

The medical records reflect that Plaintiff was treated by his family physician, Dr. Richard Ahrens, at Ahrens Clinic from April 1, 1997 to October 1, 2001, complaining of such ailments as fever, pain in his chest, vomiting and diarrhea, head cold, cough, pain in his left shoulder, head congestion, inability to sleep, pain in his abdomen, sides and thighs, nasal congestion, and head fullness. (Tr. 214-215, 238, 240, 250).

Plaintiff's mental abilities were evaluated in 2002 by Dr. Stephen R. Harris, a psychologist and neurotherapist, who diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | 309.81 - PTSD (post-traumatic stress disorder) |
| | 303.90 - Alcohol dependence in early full remission |
| Axis II: | 317 - Mild Mental Retardation |
| Axis III: | No diagnosis |
| Axis IV: | Legal, academic and occupational difficulties |
| Axis V: | GAF: Current - 55 |

(Tr. 178).

Plaintiff's mental abilities were also evaluated in 2003 by Dr. Vann Smith, who diagnosed Plaintiff with:.

| | |
|---|---|
| Axis I:. | Organic Brain Dysfunction, secondary to Axis III conditions. Cognitive Dysfunction, Non-Psychotic, Secondary to Axis II related OBS (organic brain syndrome) (294.10) |
| Axis II: | Subaverage Native Intelligence Mild (317.0) |
| Axis III:. | CAD, by history. |
| Axis IV: | Moderate, chronic. |
| Axis V: | GAF - 55 Highest prior GAF - 65 |

(Tr. 230).

Dr. Stephen R. Harris saw Plaintiff again on February 3, 2004, when he conducted a Complete Psychological Evaluation. (Tr. 180-182). Dr. Harris noted that Plaintiff had recently married and was accompanied to the evaluation by his wife. (Tr. 182). Plaintiff told Dr. Harris that he had trouble breathing, had bad feet, was constantly sick, got bloated, and had sialidosis[1] he "received while working at Ranger Boats." (Tr. 180). He stated that he was trying to stop drinking, but that he drank to help him sleep and when he drank, he drank three six-packs to a case and a half of alcoholic beverages at a time. (Tr. 181). He told Dr. Harris that he had three DWI's and a fourth pending.[2] He also reported that he and his wife both went to Ozark Counseling Services for alcohol and drug counseling. (Tr. 181). His medications at that time

---

[1] Sialidosis - An autosomal recessive disorder due to a deficiency of sialidase, occurring as two types with differing manifestations. Type I is of adolescent or adult onset and is characterized by myoclonus, ocular cherry red spot with progressive loss of visual acuity, and storage of sialyloligosaccharides. Type II is additionally characterized by somatic abnormalities, coarse facies, and cysostosis multiplex. It occurs as several variants of increasing severity with earlier age of onset; that of infantile onset is characterized also by visceromegaly and mental retardation, and the congenital form is additionally characterized by ascites, hydrops fetalis, facial edema, inguinal hernias, and early death. Cases of a juvenile form have been shown to be galactosialidosis. Dorland's Illustrated Medical Dictionary 1730 (31 ed. 2007).

[2] As will be noted later, Plaintiff stated that he had never been able to pass a driver's license test, and yet has received DWI's.

-4-

were over-the-counter aspirin and sinus medication. (Tr. 181). Academically, Dr. Harris placed Plaintiff at a kindergarten level in both reading and spelling and a second grade level in arithmetic. (Tr. 181). His full scale IQ on the WAIS-III was 63, indicating his overall level of intellectual functioning was in the mild range of retardation. (Tr. 181). In summary, Dr. Harris found Plaintiff to be an individual in the mild range of retardation, who suffered from some organic problems that might be due to his alcoholism. (Tr. 182). Dr. Harris found that Plaintiff would need assistance from some individual who was not also an alcoholic if he received any funds, and that Plaintiff seemed to be quite concerned, because his fourth DWI would give him a felony and he would have to go to jail or prison. (Tr. 182).

On April 6, 2005, Dr. Shannon H. Brownfield conducted a General Physical Examination of Plaintiff. (Tr. 183-189). At that time, Plaintiff was not taking any medications other than over-the-counter, and reported smoking three to four cigarettes a day. (Tr. 183). He told Dr. Brownfield that he had not had alcohol (ETOH). However, Dr. Brownfield noted that the ETOH odor was present in the room and upon further questioning, Plaintiff admitted drinking four to five beers the previous night. (Tr. 185). Plaintiff was found to have normal range of motion in his spine and extremities, some wheezing, mild decreased sensitivity in his toes, normal gait and coordination and limb function. (Tr. 186-187). Dr. Brownfield's diagnosis was:

1. Learning disorder
2. Parasthesia/dysesthesia[3] feet "? neuropathy"
3. ETOH use - I suspect abuse
4. Tobacco abuse
5. Alleges rhinutis/sinusitis

---

[3]Parasthesia - An abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus. Dorland's Illustrated Medical Dictionary 1404 (31st ed. 2007).
Dysesthesia - Distortion of any sense, especially of that of touch. Id. at 584.

      6. Asthma
      7. Heart murmur "? Significance"

(Tr. 189). Dr. Brownfield further found that Plaintiff should be able to work as a laborer, and believed ETOH was very important in his situation, although he did not admit it. (Tr. 189).

On May 18, 2005, a Mental RFC Assessment was completed by Jay Rankin, M.D. (Tr. 191-193). Dr. Rankin found that Plaintiff was not significantly limited in 12 out of 20 categories and was moderately limited in 8 of 20 categories. (Tr. 191-192). He further found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work, where complexity of tasks was learned and performed by rote, with few variables, little judgment, and where supervision required was simple, direct and concrete. (Tr. 193). Dr. Rankin also completed a Psychiatric Review Technique form, and found that Plaintiff suffered from mild mental retardation, and had a moderate degree of limitation in: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. He also questioned Plaintiff's credibility, since he said he did not drive and had "5 DWI's." (Tr. 205, 207).

A Vocational Analysis by George Ootsey, a case consultant, dated May 23, 2005, indicated that Plaintiff had no physical restrictions, and that Plaintiff could perform unskilled work. (Tr. 108).

On June 21, 2006, Plaintiff presented himself to the Ahrens Clinic, complaining that he was electrocuted while putting up a CB antenna, and that his left foot was burned from the electrocution. (Tr. 212). He presented to the clinic thereafter for several follow-up appointments relating to his foot. (Tr. 213, 210-211). One year later, on June 29, 2007, Plaintiff presented

himself again to the Ahrens Clinic, complaining only of an upper respiratory infection and recent onset of left scapular/shoulder pain and entire left side pain. (Tr. 233).

On July 20, 2007, Plaintiff underwent another neuropsychological evaluation by Dr. Vann Smith. (Tr. 224-226). Dr. Smith found that Plaintiff was a non-drinker ("quit 2 years ago"), and smoked one to one and a half packs of cigarettes daily. (Tr. 224). In comparing his previous test data, he found it reflected virtually identical patterns of impairment. (Tr. 226). He concluded that Plaintiff's ongoing neurocognitive symptoms interfered with his capacity to carry out routine daily activities in a consistent manner, rendering him, in Dr. Smith's clinical opinion, "disabled at this time." (Tr. 226). Dr. Smith diagnosed Plaintiff with:

1. Cognitive Dysfunction, Non-psychotic, secondary to general medical conditions (294.10)
2. Borderline Intellectual Function (V62.89)
   *TBI, Multiple, with Grade III Concussion
   *CAD, per patient history
   *ABI, secondary to electrocution injury, per patient history
   *chronic, non-psychogenic, pain disorder.

(Tr. 226). Also on July 25, 2007, Dr. Smith completed a Mental RFC Questionnaire, wherein he found:

| | |
|---|---|
| Axis I: | 294.10(Cognitive Dysfunction, Non-psychotic, secondary to general medical conditions) |
| Axis II: | V62.89 (Borderline Intellectual Function) |
| Axis III | 1) CAD 2) TBI 3) chronic pain d/o |
| Axis IV: | chronic/progressive |
| Axis V: | Current GAF - 30
Highest previous GAF - 60-65
Prognosis - guarded. |

(Tr. 219). Dr. Smith found Plaintiff was seriously limited but not precluded from doing unskilled work in 9 out of 16 categories; unable to meet competitive standards in 7 out of 16

categories; and unable to meet competitive standards in understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; and in traveling in unfamiliar places and using public transportation. (Tr. 221-222). He also concluded that Plaintiff would miss more than four days per month from work and that alcohol or drugs did not cause or contribute to Plaintiff's symptoms. (Tr. 222-223).

In an undated Disability Report - Adult - Plaintiff stated that he could not work because a lot of places want him to read and write, and that he could not drive because he could not pass the license test, either written or oral, and had to have someone drive him to work. (Tr. 75, 78). He stated that he stopped working in 2004 because he was working as a dishwasher in a nursing home and was having trouble getting to work, he did not feel good, and it hurt to be on his feet all day. (Tr. 75). He also stated that from 1994 to 2001 he did sand blasting/maintenance for a boat manufacturing company. Plaintiff reported taking aspirin. (Tr. 78).

In a Function Report dated March 14, 2005, Plaintiff reported that his daily activities consisted of his wife making him breakfast, him feeding the animals, sometimes mowing the yard, picking up twigs, and sometimes fishing. (Tr. 90). He indicated that he could dress "ok," his wife helped him bathe and care for his hair, and that he could shave, feed himself and use the toilet. (Tr. 91). He also reported that he vacuumed and sometimes sat on a riding lawn mower. (Tr. 92). He watched television every day and fished once or twice a week. (Tr. 94). He could walk about 100 feet before needing to stop and rest because he would get winded and his feet were bad. (Tr. 95). He also stated that he did not pay attention for long, did not finish what he started, did not follow written or spoken instructions well, and got along fine with authority

-8-

figures.  (Tr. 95-96).

In another Disability Report dated March 14, 2005, Plaintiff stated that he had pain in his back, neck, feet, hands, lungs, and head that never went away, and that he could not sit long, because he had "a nervous problem."  (Tr. 106).  The only medicine he reported taking was Breathe Clear, twice daily.  (Tr. 107).

In a later undated Disability Report - Appeal - Plaintiff reported that his headaches were getting worse, he was very depressed, and that he was coughing and hacking too much.  (Tr. 109, 114).  Again, the only medicine he reported taking was aspirin.  (Tr. 121).  In October 14, 2005 Disability Report - Appeal, he reported that his feet felt like he was walking on hot coals all the time and he was "just very uncomfortable all the time."  (Tr. 126).  At that time, he was taking allergy elixir for allergies, Anacin for his back and headaches, Breathe Clear for breathing, generic pain reliever for his back and headaches, nasal spray, Sudafed, Tylenol sinus and Tylenol.  (Tr. 128).

On May 10, 2007, Plaintiff completed a questionnaire presented to him by his attorney.  At that time, he was working part-time at Twin Lakes Nursing Home. (Tr,. 152).  He reported that his pain was constant and rated it "10."  (Tr. 156).  He further stated that he took no prescription medications, had trouble walking, and that it depended on how he felt on a particular day as to how much he could lift and carry.  (Tr. 167-168).  Although he stated he had trouble with his hands being numb, he stated he could make a fist with each hand and touch each finger to the thumb on each hand.  (Tr. 168).

At the hearing held on June 28, 2007, Plaintiff stated that he was still working part-time at Twin Lakes Nursing home - about 21 hours a week, and that he probably could do more than

21 hours if an employer accommodated him. (Tr. 272). At the nursing home, he cleaned the hall floors and buffed them and cut the grass - basically did maintenance work. (Tr. 272-273). He testified that he had a lot of anger, did not sleep very well, stuttered pretty badly, and had pain. (Tr. 273-285). He testified that he quit drinking completely, and could sit for 30 minutes. (Tr. 286-287). He also stated that he did not know if he was depressed, but it seemed like it at times. (Tr. 291).

Plaintiff's wife testified at the hearing as well, and the major portion of her testimony was cumulative. She did say that his motor skills were not good and that he forgot a lot and was always coughing, although 80% of his coughing occurred when he was lying down. (Tr. 309).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

AO72A
(Rev. 8/82)

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion:**

    **A. Severe Impairments**

Plaintiff contends the ALJ erred in failing to find that Plaintiff's foot injury, speech

AO72A
(Rev. 8/82)

impediment, and depression were severe. The Court believes there is sufficient evidence to support the ALJ's conclusion that these impairments were not severe.

With respect to Plaintiff's foot injury, which occurred in June of 2006, Plaintiff received treatment from Dr. Ahrens six times in June and July of 2006. No further treatment was sought thereafter for his foot, and almost one year later, on May 10, 2007, Plaintiff complained of his feet bothering him. Furthermore, on May 15, 2007, Plaintiff's foot was reported as "well healed" by Dr. Ahrens. (Tr. 233).

Regarding Plaintiff's stuttering, Plaintiff testified that he had this speech impairment when he was young, and there is no evidence that a speech impairment prevented Plaintiff from working prior to his onset date or that it would prevent him from working at this time. In fact, he worked in one position from 1994 to 2001. Clearly, his alleged speech impairment did not limit his ability to work. In addition, the ALJ indicated that he did not have any difficulty understanding the Plaintiff's testimony at the hearing,

Regarding Plaintiff's depression, Plaintiff testified that he was not even sure that he was depressed, and Plaintiff has not been diagnosed with clinical depression. Nor does he take any medications to treat depressive/mental symptoms. Plaintiff testified that he and his wife were receiving counseling at Ozark Counseling Services for their drug and alcohol abuse, but not for depression.

Plaintiff asserts that given that he is poor, only works part-time without health insurance provided, and has severe mental impairments precluding competent decision-making, a shortage of doctor visits/prescription medication is not germane to the analysis of severity. The Court disagrees. In the present case, the records do not reveal that Plaintiff was ever denied treatment

because of lack of funds, and the Court can not say that Plaintiff's lack of funds was necessarily the reason he did not seek medical treatment or use medications.  He was certainly not reluctant to seek medical treatment at the Ahrens Clinic for various ailments in the past, and the Court believes that he would have done so if the pain was as disabling as Plaintiff alleges.

The Court finds there is substantial evidence to support the ALJ's findings that the only severe impairments suffered by Plaintiff are mild mental retardation and organic brain dysfunction.

**B.  Whether Plaintiff's Severe Impairments met or medically equaled a Listing**

Plaintiff contends that Plaintiff's mental retardation and organic brain dysfunction met or medically equaled Listings 12.02 and 12.05C.  The burden of proof is on Plaintiff to establish that his impairments meet or equal a listing.  Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010), citing Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  The ALJ found that Plaintiff's mental impairments did not meet or medically equal the requirements of listings 12.02 or 12.05, considered whether the "paragraph B" criteria and "paragraph C" criteria were satisfied, and concluded they were not.

Although Dr. Harris' 2004 evaluation indicated that Plaintiff had a full scale IQ of 63,[4] Dr. Vann Smith's July 2007 testing, which was conducted two years after Plaintiff stated he stopped drinking, revealed a verbal IQ of 79, a performance IQ of 81, and a full scale IQ of 81.  (Tr. 225).  A review of Listings 12.02 and 12.05 lead the Court to conclude that Plaintiff's mental limitations do not meet the criteria set out in these listings.

---

[4]The Court also notes that Magistrate Judge Shepherd considered and addressed Dr. Harris' 2004 evaluation in his 2006 decision.

### C. Failure to Fully Develop the Record

Plaintiff asserts that the ALJ failed to properly develop the record by not sending Plaintiff for a consultative neurological examination, based on Plaintiff's complaints of chronic pain and tingling and numbness in his foot.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The ALJ is only required to re-contact medical sources "whenever the evidence the ALJ receives from a claimant's medical source is inadequate to determine whether the claimant is disabled." Bond v. Astrue, 2008 WL 2328346, *3 (W.D. Ark. 2008). In the present case, the evidence is not inadequate for the ALJ to conclude Plaintiff's pain, tingling and numbness in his foot did not cause Plaintiff to be disabled. A review of the medical records indicates that in the April 6, 2005 general physical examination, Dr. Brownfield, reported a mild decreased sensitivity in Plaintiff's toes, but his gait and coordination and limb function were normal. In addition, although Dr. Brownfield diagnosed Plaintiff with parasthesis/dysesthesia of his feet and indicated "? neuropathy" in her diagnosis, she also concluded that Plaintiff should be able to

work as a laborer. Additionally, even after Plaintiff injured his foot in 2006 when he was electrocuted, he worked thereafter part-time at a nursing home, doing basic maintenance work. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir.2005); Gowell v. Apfel, 242 F.3d 793, 798 (8th Cir.2001). Substantial evidence supports the ALJ's findings and it was not necessary for him to order additional exams.

### D. Subjective Complaints and Credibility Analysis:

In assessing Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. He noted the absence of ongoing medical care during the claimed period of disability as being inconsistent with allegations of severe and disabling symptoms or limitations. The records consistently show that Plaintiff did not take any prescribed medications except for the medicines Dr. Ahrens

-15-

AO72A
(Rev. 8/82)

prescribed when he injured his foot. Failure of the Plaintiff to seek medical treatment strongly weighs against his subjective claims of pain and limitation and has been held to be inconsistent with allegations of pain. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam).

In addition, the ALJ noted the fact that Plaintiff's work activity after the alleged onset date indicated greater daily activities than what Plaintiff generally reported. The ALJ also noted, and the record confirms, that there are inconsistencies in the record that detracted from Plaintiff's testimony and his wife's testimony. The ALJ specifically and accurately set forth those inconsistencies:

> The undersigned notes that the claimant reported in Exhibit B-17E that he never does yard work, mops the floor, vacuums or cleans house; yet, the claimant testified that his work at Twin Lakes Nursing home consists of buffing the halls and mowing with the riding lawnmower. The record reflects that the claimant reported in Exhibit B-13E (received on October 17, 2005) that he eats very little compared to a few years ago. Yet, the medical evidence of record shows that the claimant has gained weight since 2003, which would seem inconsistent with allegations of decreased food consumption. Medical records show that the claimant weighed 187 pounds on April 7, 2003, 215 pounds on January 11, 2006, 207 pounds on July 28, 2006 and 214 pounds on May 15, 2007 (Exhibits B-7F and B-9F). In addition, Dr. Harris report dated May 13, 2002 reflects that the claimant reported he had lost his driver's license because of five DWI's (Exhibit B-1E). Yet, the claimant reported in Exhibit B-4E that he had never had a driver's license. It is also noted that when the claimant saw Dr. Brownfield on April 6, 2005, when asked about alcohol consumption, he denied it; yet, Dr. Brownfield stated that "ETOH" odor was present in the room and that upon further questioning, the claimant admitted to four or five drinks of beer the previous night (Exhibit B-3F).

(Tr. 21).

It is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Accordingly, the Court finds there is substantial evidence to support the ALJ's conclusion that Plaintiff's

subjective complaints were not totally credible.

### E. RFC Assessment:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of all of the examining and non-examining consultants, as well as treating physicians, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform a full range of work at all exertional levels, with certain nonexertional limitations. Other than the evaluation and assessment provided by Dr. Vann Smith, which will be more fully discussed below, there is no other evidence in the record indicating Plaintiff would not be able to engage in work compatible with the ALJ's RFC assessment. Based on the entire evidence of record, the Court believes there is substantial evidence to support the ALJ's RFC findings.

**F. Failure to give Dr. Vann Smith's opinion sufficient weight**

Plaintiff argues that the ALJ failed to give the 2007 report of Dr. Vann Smith the weight it is entitled. "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record. Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) quoting from Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009). "When a treating physician's opinion 'are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.'" Halverson, 600 F.3d at 930, quoting from Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002). In the present case, the ALJ discussed Dr. Smith's evaluation at length and pointed out several flaws in Dr. Smith's statements and conclusions. (Tr. 86-87). The ALJ stated:

> The undersigned has also considered the opinion of Dr. Smith dated July 25, 2007, and found at Exhibit B-8F but finds that this opinion is inconsistent with the evidence of record as a whole. The undersigned first notes that Dr. Smith assessed the claimant with a 30 on the GAF Scale which is normally indicative of serious impairment in communication or judgment or inability to function in almost all areas (e.g., stays in bed all day, no job, home or friends). Yet, the record reflects that the claimant is currently working 21 hours a week and that he is married and apparently gets along well with his wife. (Exhibit B-2F). Further, the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, Dr. Smith's diagnoses included cognitive dysfunction, non-psychotic, secondary to general medication condition(s) including chronic, non-psychogenic pain disorder. Yet, as was discussed previously, there is no evidence that the claimant experiences chronic pain. In addition, it is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms but rather through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

(Tr. 22).

As noted by Defendant, courts have affirmed decisions in which one-time examination reports from Dr. Vann Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists"). In Clement v. Barnhart, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." Id. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Vann Smith's opinions. See Cole v. Astrue, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record); Partee v. Astrue, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith); Haarstad v. Astrue, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009). The court in Cole also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1. The undersigned is of the opinion that this is exactly what the ALJ did in the present case.

The Court believes that the ALJ properly found Dr. Smith's findings and examination

-19-

AO72A
(Rev. 8/82)

inconsistent with other evidence, such as the evaluation and assessment by Dr. Jay Rankin, Dr. Shannon H. Brownfield, Plaintiff's daily activities, and his failure to seek medical treatment for both his physical and mental impairments.

## V. Conclusion:

Based on the foregoing, the Court affirms the ALJ's decision and dismisses the Plaintiff's case with prejudice.

IT IS SO ORDERED this 4th day of March, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE